UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-20926-CIV-SEITZ/MCALILEY

MARIE TIME,

    Plaintiff,

v.

PUBLIX SUPER MARKET, INC.,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Publix Super Market's Motion for Summary Judgment [DE-44]. Plaintiff Marie Time commenced this action by filing a Complaint on March 8, 2006, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County. (*See* DE-1.) Defendant removed the case to this Court on April 7, 2006. (*Id.*) The main focus of Plaintiff's Complaint is that Defendant violated the Pregnancy Discrimination Act (the "PDA"), 42 U.S.C. § 2000e-(k) (part of Title VII of the Civil Rights Act of 1964).

Specifically, Plaintiff alleges that Defendant failed to accommodate her doctor's work restrictions during her pregnancy/failed to offer her an alternative position, and denied her a six-month "maternity leave" after she gave birth to her baby. It also appears that Plaintiff is alleging that Defendant constructively discharged her. The Court has carefully considered the parties' papers and the other, relevant portions of the record. Based on the evidence in the record, the Court must grant Defendant's motion as to all of Plaintiff's claims.

I.    **FACTUAL BACKGROUND**

The allegations in the Complaint paint an egregious picture. However, the undisputed evidence in the record reflect the following facts. Plaintiff worked as a lunch meat and cheese clerk for Defendant.

(Pl. Dep.[1] 85:18-19.) Plaintiff's responsibilities included, among other things, maintaining the lunch meat and cheese case; unloading the delivery truck and verifying deliveries; setting up displays; cleaning, sweeping, and mopping the sales area and stockroom; operating equipment such as a pallet jack, scissor lift, baler, and dumpall; and lifting, carrying, and shelving products. (*Id.* 85:20-87:10.) Plaintiff's job also included interacting with customers, truck drivers, and vendors. (*Id.* 87:11-14.)

On or about June 24, 2004, Plaintiff provided her assistant manager with a note from her obstetrician/gynecologist, indicating that she was 24 weeks pregnant with a high-risk pregnancy. (*Id.* 112:12-113:1; 113:21-114:6; Ex. B to Def.'s Mot. for Summ. J.) The note states that Plaintiff "must avoid strenuous activity such as lifting, cleaning and extended standing. She needs frequent rest and bathroom breaks. Light physical duty is allowed for the remainder of this pregnancy." (Ex. B to Def.'s Mot. for Summ. J.) According to Plaintiff, her manager wanted more details about what "light physical duty" meant, and sent her home to get another doctor's note. (Pl. Dep. 113:7:114:10.) Plaintiff complied and got another note from her physician, dated June 25, 2004. (*Id.* 115:7-15; Ex. C to Def.'s Mot. for Summ. J.) The second note stated that Plaintiff "should not lift anything that weighs more than a gallon of milk. She should have a break ever[y] [*sic*] 2 hrs for 15 minutes to sit." (Ex. C to Def.'s Mot. for Summ. J.) The second note does not indicate that Plaintiff should not be reaching, bending, pushing/pulling, leaving work early, or working a particular shift. (Pl. Dep. 115:12-116:7; Ex. C to Def.'s Mot. for Summ. J.)

Plaintiff has admitted that she never had a discussion with her managers about what she could and could not do on the job. (Pl. Dep. 116:8-19.) She has also admitted that she asked for a transfer to the seafood department because she believed the tasks required of a seafood clerk would be easier for her (when Plaintiff had her first baby, she worked in the seafood department in a different Publix store and it

---

[1] "Pl. Dep." refers to the official transcript of the deposition of Plaintiff Marie Time, taken on November 20, 2006. It is attached as Exhibit A to Defendant's Motion for Summary Judgment.

was "so easy for [her]"). (*Id.* 117:4-11.) Plaintiff received her requested transfer to the seafood department, but found this job difficult because she had to work night shifts, and she had to "bend down, [take] all the fish out, put on the tray, and push them back inside . . . and clean the seafood." (*Id.* 117:4-18; 120:1-12.) She also has admitted that she never went back to her physician for a note saying that she could not do tasks like bending or pulling out display trays and pushing them back into the display counter. (*Id.* 120:13-121:25.)

Plaintiff delivered her baby prematurely on September 9, 2004. (*Id.* 131:24-132:2; 144:7-9.) In order to care for her baby immediately following his birth, Plaintiff took two weeks of paid vacation from September 9 to September 23, 2004. (*Id.* 144:7-14.) Defendant gave Plaintiff maternity leave from September 25 to December 25, 2004.[2] (*Id.* 144:15-145:19; Ex. E to Def.'s Mot. for Summ. J.) Plaintiff testified at her deposition that, if her baby had been healthy, she would have been able to return to work within three months of her delivery. (Pl. Dep. 135:9-21.) However, because her baby was born prematurely and very ill, her doctor recommended that she continue to stay at home with the baby for six months. (*Id.* 136:6-11; 145:20-25; Ex. D to Def.'s Mot. for Summ. J.) Plaintiff stayed at home with her baby for approximately a year and a half, until July 18, 2006, when she began working at Fisher Island Market in the deli department. (Pl. Dep. 64:6-10.)

Plaintiff has offered no evidence to support her opposition to the instant motion, other than a May 31, 2005 letter from the United States Equal Employment Opportunity Commission ("EEOC"). (*See* DE-47-2.) The letter set forth Defendant's position regarding Plaintiff's Charge of Discrimination. (*See id.*) The letter also advised Plaintiff that she needed to submit written evidence to refute the information Defendant had provided or the EEOC would send her a final dismissal notice. (*See id.*)

---

[2] This was leave pursuant to the Family and Medical Leave Act. Defendant's "Leave of Absence Action - Retail" form shows December 25, 2004 as Plaintiff's expected date of return to work. (Ex. E to Def.'s Mot. for Summ. J.) However, Plaintiff testified at her deposition that she was told she needed to be back at work by December 18, 2004. (Pl. Dep. 144:20-145:19.) According to Plaintiff, she was told that if she did not return to work by this date, she would need to resign or she would be terminated. (*Id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a proper motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). With these principles in mind, the Court turns to Defendant's motion for summary judgment.

## III. DISCUSSION

### A. Plaintiff's Claim of Discrimination Under the PDA/Title VII

#### 1. Alleged Failure to Accommodate Work Restrictions With Light/Modified Duty

Plaintiff alleges that Defendant violated her rights under the PDA/Title VII by unlawfully discriminating against her because she was pregnant. Specifically, Plaintiff claims that Defendant did not accommodate the work restrictions her physician imposed because of her pregnancy by offering her

some sort of modified/light duty or alternative work assignment. Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *Bass v. Bd. of County Comm'rs*, 256 F. 3d 1095, 1103 (11th Cir. 2001) (quoting 42 U.S.C. §2000e-2(a)). "In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act, which provides that prohibitions of discrimination 'because of sex' or 'on the basis of sex' include discrimination on the basis of pregnancy, childbirth, or related medical conditions." *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312 (11th Cir. 1999) (citing 42 U.S.C. § 2000e(k)). The PDA provides that

> women affected by pregnancy, childbirth, or related medical conditions **shall be treated the same** for all employment-related purposes, including receipt of benefits under fringe benefits programs, as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k) (emphasis added).

A plaintiff can survive summary judgment on a Title VII claim by producing either direct or circumstantial evidence of discrimination. *Bass*, 256 F.3d at 1103. Plaintiff has admitted that she has no direct evidence of discrimination. (Pl. Dep. 161:3-16.) Thus, the Court shall analyze Plaintiff's discrimination claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A plaintiff establishes a *prima facie* case of discrimination under the PDA/Title VII by showing: (1) she belongs to a "protected" class; (2) she was qualified to do her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her classification more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802). Certainly, Plaintiff belonged to a protected class, and the Court assumes that she was qualified to do her job. Setting aside for the moment the issue of whether or not Plaintiff suffered an

adverse employment action,[3] the Court finds that Plaintiff has not satisfied the fourth element of the *prima facie* case: she has not shown a differential application of Defendant's work rules.

An employer may not decide whether a pregnant woman can assume or continue with a particular job (that decision is left to the pregnant employee); however, it also is not required to make alternative work available to a pregnant employee. *Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991); *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1315-16 (11th Cir. 1994).[4] By the same token, "an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." *Spivey*, 196 F.3d at 1313 (citing *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383-84 (11th Cir. 1994)). Here, Plaintiff has not offered <u>any</u> evidence showing that (1) Defendant treated other non-pregnant but otherwise temporarily disabled employees differently from her; or (2) Defendant had a modified/light duty policy in place and, in practice, was applying it unequally to pregnancy-related conditions.[5] *See Byrd*, 30 F.3d at 1383 (finding that, even if plaintiff could not point to specific, disabled employees who were treated better than she was treated, she could establish a presumption of pregnancy discrimination by showing, for example, that taking advantage of her employer's generally available sick leave policy for her pregnancy-related time off from

---

[3] Plaintiff has alleged that she was constructively discharged, which this Court addresses later in this Order.

[4] In *Armstrong*, the Eleventh Circuit stated: "The right to make th[e] decision rests with the woman. She may choose to continue working, to seek a work situation with less stringent requirements, or to leave the workforce. In some cases, these alternatives may, indeed, present a difficult choice. But it is a choice that each woman must make." *Armstrong*, 33 F.3d at 1315.

[5] Again, as previously discussed, Plaintiff has not produced any record evidence at <u>all</u>, other than the aforementioned May 31, 2005 letter to her from the EEOC. (*See* DE-47-2.) The undisputed evidence shows that, although Plaintiff submitted a doctor's note regarding lifting restrictions, she never had a discussion with her managers about what other activities she could and could not do on the job. (Pl. Dep. 116:8-19.) The undisputed evidence also shows that, when Plaintiff asked to be placed in the seafood department because it would be an easier job during her pregnancy, Defendant granted her request. (*Id.* 117:4-18; 120:1-12.) At her deposition, Plaintiff made clear that the seafood department position did not turn out to be what she was expecting, in that she felt she was unable to perform tasks like bending or pulling out display trays and pushing them back into the display counter. However, she admitted that she never sought a note from her physician saying that, medically, she could not perform these types of tasks. (*Id.* 120:13- 121:25.) She also made clear in her deposition testimony that she did not wish to work evening shifts, but neither of her two doctor's notes indicated that she was physically unable to work in the evenings. (*See* Exs. B and C to Def.'s Mot. for Summ. J.)

work was a substantial cause of her discharge).

### 2. Alleged Failure to Provide Maternity Leave

Plaintiff also alleges that Defendant failed to provide her with leave time in accordance with her doctor's recommendation that she spend an additional six months at home with her newborn baby because of his fragile health. Plaintiff does not dispute that she used two weeks of vacation and three months of FMLA maternity leave from September 9 through December 17, 2004. It appears, however, that she is claiming that Defendant should have allowed her an additional six months' time to spend at home to care for her ailing child. Unfortunately, this is not the law. The PDA does not require an employer to provide maternity leave for its employees. *Armstrong*, 33 F.3d at 1317 ("The [PDA] does not, despite the urgings of feminist scholars, require employers to offer maternity leave or take other steps to make it easier for pregnant women to work – to make it as easy, say, as it is for their spouses to continue working during pregnancy") (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994)). Moreover, it does not require an employer to provide additional leave so that an employee may care for an ailing child. *See Piantanida v. Wyman Ctr.*, 116 F.3d 340, 342 (8th Cir. 1997) ("In examining the terms of the PDA, we conclude that an individual's choice to care for a child is not a 'medical condition' related to childbirth or pregnancy"); *see also Barrash v. Bowen*, 846 F.2d 927, 930 (4th Cir. 1988) (termination of employment appropriate where plaintiff insisted on, and took, six months' leave after the birth of her child but employer's policy did not allow for such leave). Defendant was only required to provide Plaintiff with the appropriate amount of leave under the FMLA, which Plaintiff has not disputed that it did.

### B. Plaintiff's Claim of Constructive Discharge

Finally, although not completely clear, it appears that Plaintiff is claiming she was constructively discharged, in that she was forced to resign from her position with Defendant in order to care for her ailing child. In order to establish a constructive discharge, a plaintiff must show that her "working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have

-7-

felt compelled to resign." *Wardwell v. School Bd. of Palm Beach County*, 786 F.2d 1554, 1557 (11th Cir. 1986). The mere establishment of a Title VII violation is insufficient to support a constructive discharge claim. *Smith v. Mount Sinai Med. Ctr.*, 36 F. Supp. 2d 1341, 1347 (S.D. Fla. 1998) (citing *Coffman v. Tracker Marine*, 141 F.3d 1241, 1247 (8th Cir. 1998)). Here, Plaintiff has not even demonstrated that a genuine issue of material fact exists regarding Defendant's alleged violation of Title VII/the PDA. It is terribly unfortunate that Plaintiff's son was born prematurely and very ill. Based on her doctor's recommendation, Plaintiff understandably made the choice to stay at home and care for him. However, the law does not require Defendant to accommodate Plaintiff's choice, without any evidence that Defendant gave any other similarly situated employees any type of leave beyond that required by the FMLA.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that:

(1) Defendant's Motion for Summary Judgment [DE-44] is GRANTED;

(2) All pending motions not otherwise ruled upon in this Order are DENIED AS MOOT; and

(3) This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 6th day of June, 2007.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record